UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOLLY SPENCER and
GAVIN SPENCER,

        Plaintiffs,                   CASE NO.:

vs.

CAPSTONE CREDIT & COLLECTIONS, LLC,

        Defendant.

_____

## COMPLAINT AND JURY TRIAL DEMAND

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 et seq. ("FCCPA").

3. Venue is proper in this District because the acts and transactions occurred here, Defendant is located here and Defendant transacts business here.

## PARTIES

4. Plaintiff Holly Spencer is a natural person who resides in Pasco County, Florida. She is a "consumer" as that term is defined by the FDCPA and the FCCPA.

5. Plaintiff Gavin Spencer is a natural person who resides in Pasco County, Florida. He is a "consumer" as that term is defined by the FDCPA and the FCCPA.

6. Defendant Capstone Credit & Collection, LLC (hereinafter "Capstone") is a business that primarily engages in the collection of consumer debt. Capstone is a "debt collector" as that term is defined by the FDCPA and the FCCPA.

## FACTUAL ALLEGATIONS

7. Prior to the filing of this lawsuit, Plaintiffs incurred a financial obligation to Arbor Villa Apartment Homes ("Arbor Villa") that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by the FDCPA and FCCPA. Specifically, this debt was related to monies owed for residential rent after an alleged breach of a written lease.

8. Plaintiff's relationship with Arbor Villa was governed by a written lease, a true and correct copy of which is attached hereto as **Exhibit A**. Important to this lawsuit, the Apartment Lease states:

> 7. **DEFAULT AND REMEDIES:** ... You must pay rent for the entire term of the lease *or until we re-rent your dwelling if you vacate before the expiration of your lease term*. If you do not fulfill the original term or renewal of this lease, you agree to pay $30.00 for each remaining month or fraction as a liquidated damage for our re-rental expenses, in addition to any other amount due including, for example, for any physical damage or unpaid rent.

(emphasis added).

9. Additionally, the lease contained a liquidated damages clause, signed by Plaintiffs that stated:

> **I agree, as provided in the rental agreement, to pay $569.00 (an amount that does not exceed 2 months' rent) as liquidated damages or an early termination fee, if I elect to terminate the rental agreement, and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.**

10. Consistent with its wording, an Arbor Villa representative explained to Plaintiffs that they could agree to the liquidated damages provision and pay 1 month's rent if they broke the lease. If Plaintiffs did not agree to the liquidated damages and the apartment was not re-rented, the representative explained, then Arbor Villa could seek full rent.

11. Plaintiffs moved out with approximately six (6) months remaining on their lease with Arbor Villa.

12. Arbor Villa informed Plaintiffs that their apartment was re-rented immediately after Plaintiffs moved out.

13. Regardless of whether the apartment was re-rented, the liquidated damages clause would limit any alleged debt for past due rent to $569.00 plus $30.00 for each additional month of the lease.

14. Arbor Villa engaged Defendant Capstone to collect the alleged debt from Plaintiffs. Capstone engaged in collection activities and communications with Plaintiffs to collect the alleged debt owed to Arbor Villa.

15. Upon information and belief, at all times during their collection activities, Capstone had possession of the Plaintiffs' lease and was fully aware of the terms of Arbor Villas' lease including the liquidated damages provision.

16. On or about March 20, 2014, Capstone sent Plaintiffs a letter in an attempt to collect a debt (the "March Letter"). A true and correct copy of the March Letter is attached hereto as **Exhibit B**.

17. The March Letter made a demand for payment of $8963.46 and also provided a description of the amounts making up the alleged debt. The amounts include a listing for October and

November rent in the amount of $1,138.00. There is also a charge for the "Balance of Lease" in the amount of $3,414.00 - or six (6) additional months of rent.

18. The March Letter also purports to charge $3,586.46 in "Collection Costs" which is outrageous, unfair and unconscionable.

19. In reality, the collection costs are an unfair and unconscionable means in connection with attempting to collect a debt. Upon information and belief, Capstone fee to Arbor Villas consists of a percentage of any recovery it is able to achieve. To defray this cost, Arbor Villas concocts "Collection Costs" that will provide Arbor Villas with the full amount it is seeking after Capstone takes its percentage.

20. Here, the charge breakdown provided by Capstone shows "Total Due to Property" as $5,377. After $3,586.46 are added as Collection Costs, the total is $8,963.46. Removing approximately 40% from the total (i.e. Capstone's percentage fee) leaves a balance of the "Total Due to Property."

21. On or about July 16, 2014, Capstone sent another letter to Plaintiffs in an attempt to collect a debt (the "July Letter"). A true and correct copy of the July Letter is attached hereto as **Exhibit C**.

22. The July Letter again demanded payment of $8,963.46. The July Letter also attached the Plaintiffs' lease with Arbor Villa. As such, Capstone had actual knowledge of the terms of the lease - including the terms of the liquidated damages.

## COUNT I

### VIOLATIONS OF THE FDCPA AGAINST GAVIN SPENCER

23. Plaintiff Gavin Spencer incorporates by reference paragraphs 1 through 22 of this Complaint as though fully stated herein.

24. The March Letter and July Letter were attempts to collect a debt by a debt collector. The language of the letters say this explicitly. Moreover, the letters were addressed to both Plaintiffs and demanded payment for a debt.

25. Defendant violated the following provisions of the FDCPA in attempting to collect a debt against Plaintiff Gavin Spencer:

   a. Defendant violated 15 U.S.C. § 1692e and 1692e(2) by using false, deceptive, and misleading means to collect a debt and making a false representation as to the amount of a debt. Specifically, the March Letter and June Letter attempted to collect a debt far in excess of what was allowed by the Plaintiffs' lease.

   b. Defendant violated 15 U.S.C. § 1692f and 1692f(1) by attempting to collect a percentage-based "Collection Costs" when such amount was not expressly authorized by the Plaintiffs' lease.

26. As a result of Defendant's violations of the FDCPA, Plaintiff Gavin Spencer is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT II

### VIOLATIONS OF THE FDCPA AGAINST HOLLY SPENCER

27. Plaintiff Holly Spencer incorporates by reference paragraphs 1 through 22 of this Complaint as though fully stated herein.

28. The March Letter and July Letter were attempts to collect a debt by a debt collector. The language of the letters say this explicitly. Moreover, the letters were addressed to both Plaintiffs and demanded payment for a debt.

29. Defendant violated the following provisions of the FDCPA in attempting to collect a debt against Plaintiff Holly Spencer:

   a. Defendant violated 15 U.S.C. § 1692e and 1692e(2) by using false, deceptive, and misleading means to collect a debt and making a false representation as to the amount of a debt. Specifically, the March Letter and June Letter attempted to collect a debt far in excess of what was allowed by the Plaintiffs' lease.

   b. Defendant violated 15 U.S.C. § 1692f and 1692f(1) by attempting to collect a percentage-based "Collection Costs" when such amount was not expressly authorized by the Plaintiffs' lease.

30. As a result of Defendant's violations of the FDCPA, Plaintiff Holly Spencer is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT III

### VIOLATIONS OF THE FCCPA AGAINST GAVIN SPENCER

31. Plaintiff Gavin Spencer incorporates by reference paragraphs 1 through 22 of this Complaint as though fully stated herein.

32. The March Letter and July Letter were attempts to collect a consumer debt by a debt collector. The language of the letters say this explicitly. Moreover, the letters were addressed to both Plaintiffs and demanded payment for a debt.

33. Defendant violated Florida Statute § 559.72(9) by claiming and attempting to enforce a debt against Gavin Spencer with knowledge that the debt was not legitimate. Defendant

had actual knowledge of the terms of the Plaintiffs' lease and knew that charges above the liquidated damages amount were not legitimate.

34. As a result of Defendant's violations of the FCCPA, Plaintiff Gavin Spencer is entitled to statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Florida Statute § 559.77 from Defendant.

## COUNT IV

### VIOLATIONS OF THE FCCPA AGAINST HOLLY SPENCER

35. Plaintiff Holly Spencer incorporates by reference paragraphs 1 through 22 of this Complaint as though fully stated herein.

36. The March Letter and July Letter were attempts to collect a consumer debt by a debt collector. The language of the letters say this explicitly. Moreover, the letters were addressed to both Plaintiffs and demanded payment for a debt.

37. Defendant violated Florida Statute § 559.72(9) by claiming and attempting to enforce a debt against Holly Spencer with knowledge that the debt was not legitimate. Defendant had actual knowledge of the terms of the Plaintiffs' lease and knew that charges above the liquidated damages amount were not legitimate.

38. As a result of Defendant's violations of the FCCPA, Plaintiff Holly Spencer is entitled to statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Florida Statute § 559.77 from Defendant.

### JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays that judgment be entered against Defendant (i) for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant and for each Plaintiff; (ii) for an award of statutory damages of $1,000.00 pursuant to Florida Statute § 559.77 against Defendant and for each Plaintiff; (iii) for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) and Florida Statute § 559.77 against each Defendant and for Plaintiff; and (iv) for such other and further relief as may be just and proper.

Dated: August 21, 2014                    **ERIC C. ROBERSON, P.A.**

                                          By:   */s/ Eric C. Roberson*
                                                Eric C. Roberson
                                                Florida Bar No. 0014649
                                                2064 Park St.
                                                Jacksonville, FL 32204
                                                (904) 404-8800
                                                (904) 517-8387 (fax)
                                                eric@robersonlawjax.com
                                                *Attorneys for Plaintiffs*

# EXHIBIT A

## Meadow Wood Property Company
## APARTMENT LEASE

REV 4-8-02

| Apartment Address<br><br>8350-202 Teresa Catherine Way<br>Port Richey, Florida 34668 | | Lease Date<br>04/13/2012 | Initial Lease Term<br>Beginning:<br>04/13/2012<br>Ending: 05/31/13 |
|---|---|---|---|
| Monthly Rent | Prorated Rent (if any) | Security Deposit | Pet Fee (if any) | Prepared by:<br>Lyn Skinner |
| $ 569.00 | $341.00 Due 5/1/12 | $ 569.00 | $450.00 | |

RESIDENT NAME(S):     NAMES AND BIRTH DATES OF CHILDREN:

Holly Spencer
Gavin Spencer

ADDITIONAL AGREEMENTS (IF ANY): Residents moved in on $299.00 Move-in Special, first month free and increased Security Deposit. Initials _HS_ / _GS_

This is a lease between the above named Resident(s) and the below named Landlord (through its agent if one is named) for the apartment dwelling described above. It (and any contemporaneously executed additional agreements) is the entire agreement between Resident(s) and Landlord and may be modified only in writing. As used in this lease, "you" means the resident (tenant) or residents whose names appear above. If there is more than one resident, you are jointly and severally liable for any payments due to us. "We," "our," or "us" mean the Landlord. "Premises" means the entire apartment community. UPON EXECUTION OF THIS LEASE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO ALL OF ITS PROVISIONS. It was executed by the Resident(s) and the Landlord on the above "Lease Date."

BY SIGNING THIS RENTAL AGREEMENT YOU AGREE THAT UPON SURRENDER OR ABANDONMENT, AS DEFINED BY THE FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR THE STORAGE OR DISPOSITION OF YOUR PERSONAL PROPERTY.

RESIDENT SIGNATURE(S): _[signatures]_

LANDLORD: Meadow Wood Property Company

MANAGING AGENT: Lyn Skinner

COMMUNITY: Arbor Villa Apartment Homes

8351-101 James Joseph Way, Port Richey, FL 34668

By: _[signature] Lyn Skinner_

### 1. SECURITY DEPOSIT:

A. Your security deposit will be held as indicated below:

☒ Deposited in a separate ☐ interest bearing ☒ non-interest bearing account with:
Wachovia, 100 South Ashley Drive, Tampa, AL 33602. You will receive 75% of any interest paid on your deposit but not more than 5% per year.

☐ Commingled with our other funds, and we have posted a surety bond. You will receive 5% annual interest.

B. Before you may occupy the apartment, you must pay us the full security deposit indicated above. Your security deposit may not be applied by you as rent, but is a good faith deposit for your faithful fulfillment of each condition in this lease and as a contingency against any physical damage to the premises caused by you or your invitees.

C. The following is Florida Statute 83.49(3) which we are required to provide to you:

(3)(a) Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

This is a notice of my intention to impose a claim for damages in the amount of _____ upon your security deposit, due to _____. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address).

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit.

(b) Unless the tenant shall object to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.

(c) If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive his or her court costs plus a reasonable fee for his or her attorney. The court shall advance the cause on the calendar.

(d) Compliance with this section by an individual or business entity authorized to conduct business in this state, including Florida-licensed real estate brokers and salespersons, shall constitute compliance with all other relevant Florida Statutes pertaining to security deposits held pursuant to a rental agreement or other landlord-tenant relationship. Enforcement personnel shall look solely to this subsection to determine compliance. This subsection prevails over any conflicting provisions in chapter 475 and in other sections of Florida Statutes.

2. RENT: You agree to pay the monthly rent indicated above at the Landlord's address on or before the 1st day of each month. If prorated rent is indicated, it is the amount due for the first calendar month of the lease. Time is of the essence. Rent payments must be made by one check or money order even if there is more than one resident. Payments may not be made by third party checks. Payments may not be made in cash. If the rent is paid after the 5th day of the month, a late charge of $30.00 will be due, plus an additional charge of $3.00 per day for each day thereafter until the rent is paid in full, all as additional rent. However, we reserve the right to refuse payment after expiration of our demand for rent or possession as provided for in Florida Statutes. If your check is dishonored by your bank, you must pay us a service charge of $30.00 plus any other charges and penalties provided by Florida law and plus any accrued late charge. If two of your checks are dishonored while a resident of this community, you must pay future rent by cashier's check or money order. We are not required to redeposit a dishonored check. You must pay to us any sales or other taxes, which are due on your rental payments. Any monies that you owe to us are deemed rent under this lease. Payments, at our option, may first be applied to any outstanding balance.

3. RENEWAL: This lease will continue as a month-to-month lease after the initial term unless or until either you or we give the other at least thirty days written notice of termination. Termination must be the last day of the initial term or the last day of a subsequent calendar month. Rent may be increased after the initial term upon not less than 30 days notice.

4. UTILITIES: We pay for the following utility services for your apartment: pest control. You must obtain electric service for your apartment. You must pay water, sewer and trash charges (which are separately metered) each month within the payment grace period as additional rent. We are not liable for interruption or malfunction in service of any utility due to any cause. If the interruption is our fault, your rent may be abated if service is not restored within a reasonable time. You may not occupy your apartment without electric service.

5. OCCUPANCY: Only those persons whose names appear on this lease may occupy the apartment without our prior written consent except guests for not more than 7 consecutive days or 14 total days during the term of this lease. The apartment may be used solely for private housing. You may not assign this lease or sublet any portion of your apartment. If you will be absent for more than 14 days, you must notify us in writing.

6. PETS: No pets may enter or be kept in the apartment or on the premises without our written consent.

7. DEFAULT AND REMEDIES: If you default in complying with this lease or the law, we have the right to retake possession as provided by Florida law. Rent is accelerated upon default. Under no circumstances can our acceptance of your keys, or re-entry or any other action be considered as a termination of the lease or retaking for our own account. You must pay rent for the entire term of the lease or until we re-rent your dwelling if you vacate before expiration of your lease term. If you do not fulfill the original term or renewals of this lease, you agree to pay $30.00 for each remaining month or fraction as a liquidated damage for our re-rental expenses, in addition to any other amount due including, for example, for any physical damage or unpaid rent. If you or your invitee engages in criminal activity on the premises, such action will be a

2

default for which your lease may be immediately terminated. In addition to any of the foregoing, you and we have any other rights and remedies provided by law. The prevailing party in any dispute arising out of this lease will be entitled to recover reasonable attorney's fees and litigation costs. Landlord shall be entitled to recover costs of collection even in the event that there is no judgment.

**8. HOLDOVER:** If you fail to deliver all keys and vacate on or before your lease termination, you must pay double rent until you do so.

**9. NOTICES:** Any notices from us to you will be deemed delivered when mailed to you at your apartment by first class mail; or personally handed to you or anyone in your apartment; or left at your apartment in your absence. Delivery of one copy of a notice is sufficient for all residents. Any notice from you to us will be deemed delivered when received at our office, certified mail, return receipt requested, or personally delivered to our office staff during normal business hours.

**10. RIGHT TO ENTER:** You consent to our entering your apartment during reasonable hours for any inspections, maintenance and repairs, and pest control procedures which we deem necessary in our sole discretion; and for delivering notices and for other purposes as provided by law.

**11. REPAIR AND MAINTENANCE:** You acknowledge that you have inspected the apartment and are fully satisfied and accept it in its "as is" condition, except as otherwise agreed by you and us in writing. You are responsible for the removal of trash and garbage from your apartment to the appropriate collection point and for maintaining your apartment in a clean and sanitary condition. We will maintain air conditioning and heating equipment; plumbing fixtures and facilities; electrical systems; and appliances provided by us. Any damage to your apartment or the premises, except for normal wear, caused by you or your invitees will be corrected, repaired, or replaced at your expense.

**You must immediately notify us in writing of any needed maintenance or repair. You must inspect your smoke detector at least once a month to determine if it is working properly and notify us of any deficiency. You must change the air conditioning and heating filter monthly, or more often if required.**

**12. ALTERATIONS:** You may not make alterations or additions, nor install or maintain in the apartment, or any part of the premises, any fixtures, large appliances, devices, or signs without our written consent. Any alterations, additions, or fixtures which are made or installed will remain a part of the apartment, unless we specifically agree otherwise.

**13. LIABILITY:** We will not be liable for any damage, loss, or injury to persons or property occurring within your apartment or upon the premises, whether caused by us or someone else. You are responsible for obtaining your own casualty and liability insurance, and, with respect to your family or invitees, agree to save and hold us harmless and indemnify us from any liability. **WE STRONGLY RECOMMEND THAT YOU SECURE INSURANCE TO PROTECT YOURSELF AND YOUR PROPERTY.** Your successors, heirs, beneficiaries, and personal representatives are bound by the provisions of this lease.

**14. SECURITY:** We do not provide and have no duty to provide security services for your protection or the protection of your property. You must look solely to the public police for such protection. We will not be liable for failure to provide security services to protect you, your family, or others, or your property from the criminal or wrongful acts of others. If, from time to time, we provide any security services, those services are only for the protection of our property and will not constitute a waiver of, or in any manner modify, this disclaimer.

**15. FIRE AND CASUALTY:** If your apartment becomes uninhabitable because of fire or other casualty or unforeseen event, we may, at our option, terminate this lease or repair the apartment within 30 days. If we elect to repair, and if the damage is not due to your fault, your family's, or invitee, the rent will abate during the time you cannot occupy the apartment. Nothing may be used or kept in or about your apartment, which would in any way affect our fire and extended coverage insurance, be a violation of law, or otherwise be a hazard.

**16. WAIVERS:** Our acceptance of rent after knowledge of a breach of this lease by you is not a waiver of our rights or an election not to proceed under the provisions of this lease or the law. Our rights and remedies under this lease are cumulative; the use of one or more shall not exclude or waive our right to other remedies. Your rights under this lease are subordinated to any present or future mortgages on the premises. We may assign our interest in this lease. You and we waive any right to demand a jury trial concerning the litigation of any matters arising between us.

**17. POSSESSION:** If the apartment is not ready for your occupancy on the beginning date of this lease due to causes beyond our control, the beginning date may be extended up to 30 days or the lease may be voided at our option. We will not be liable for any loss caused by such delay or termination.

**18. APPLICATION:** If any information given by you in your application is false, we may, at our option, terminate this lease. You will notify us promptly in writing of any change in the information provided to us in your application.

**19. RADON GAS:** We are required by Florida Statute 404.056(8) to give the following notification to you. *Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.*

**20. RENTAL CONCESSIONS:** If you fail to complete the full lease term, whether by default on the provisions of this lease or exercising the provision of Early Termination, you will be required to pay back any rental concessions given in addition to the other provisions in this lease.

**21. POLICIES:** In addition to the policies below, you must observe any other reasonable policies which may be given to you now or are later implemented by us.

(a) Except for automobiles and non-commercial small trucks, no vehicles (including motorcycles, trucks, boats or boat trailers, campers, travel trailers, and motor homes) may be parked on the premises without our prior written consent. All vehicles must be currently licensed and in good operating condition <u>and repair</u>. They must be parked only within spaces provided for parking. No vehicle may be parked in front of dumpsters, blocking other vehicles, on the grass, outside the boundaries of a single designated parking space, or in entrances or exits. Any violations of the foregoing rules will subject the vehicle to being towed without notice at the owner's expense. We are not liable for any damage arising as a result of towing. You acknowledge that it is your responsibility to advise your invitees of these vehicle policies, and you further agree to determine in each case that they have complied therewith. You agree to indemnify and hold us harmless for any claims by your invitees for the towing of their vehicles for violation of these policies; you agree to pay for said towing and other charges related thereto as additional rent to be paid immediately. We may impose additional parking regulations including limiting the number of vehicles which you or your invitees may park on the premises, requiring the use of parking decals on vehicles, and/or assigning parking spaces. No more than one vehicle is allowed for each adult resident without our written consent.

(b) No vehicle maintenance or repairs or similar activities may be performed on the premises.

(c) Solicitation by you or others is not allowed on the premises.

(d) Nothing may be attached to or extended from the outside of any apartment or building except by us.

(e) Locks may not be altered nor may new locks, knockers, or other door or window attachments be installed without our prior written consent.

(f) No noise, music, or other sounds, or conduct or attire (or lack of) is permitted at any time in such manner as to disturb or annoy other persons. Certain attire may be prohibited.

(g) No spikes, adhesives, screws, hooks, nails, or the like may be driven into or applied to the walls, or other surfaces without our prior written consent except that small nails may be used for hanging wall decorations. You are responsible for the cost of repairing any holes.

(h) No water-filled furniture is permitted except waterbeds. Waterbeds are not permitted unless we are first protected as a loss payee on an insurance policy approved by us.

(I) Any draperies or other window covering must be white or lined in white so that only white may be seen from outside your apartment.

(j) No signs or other objects, which we deem to be unsightly may be displayed in your windows or elsewhere on the premises.

(k) Water may not be wasted. Water hoses may be used only with automatic shut-off nozzles. Washing of vehicles may be restricted to designated areas and times. Outside water use may be prohibited. Water leaks must be promptly reported to us.

(l) If you see mold or mildew or if you smell a musty odor in your apartment, it must be promptly reported to <u>us</u>.

(m) Patios, balconies, hallways, and entrances may not be used to store belongings. Only appropriate potted plants and outdoor furniture are permitted on patios and balconies. We may further limit what is placed in outside areas.

_[initialed]_ I agree, as provided in the rental agreement, to pay $ 569.00 (an amount that does not exceed 2 months' rent) as liquidated damages or an early termination fee, if I elect to terminate the rental agreement, and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

_____ I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.

4

# EXHIBIT B

# CAPSTONE CREDIT & COLLECTIONS, LLC
## COLLECTIONS DIVISION

Phone (813) 949-0631
Fax (813) 948-3679
1-800-849-4607
capstonecredit@verizon.net
www.capstonecollections.com

P.O. Box 1267 • Lutz, Fl. 33548-1267

March 20, 2014

GAVIN L SPENCER
HOLLY A SPENCER
8350-202 TERESA CATHERINE WAY
Port Richey, FL 34668

Extension: 300
Account #: 182122
RE: ARBOR VILLAS
Total Due: $8,963.46

Dear GAVIN L SPENCER,

Pursuant to your correspondence/phone call, enclosed are copies of the documents you requested in regard to the above referenced account. Please make your check payable to Capstone Credit & Collections, LLC and remit the balance to the above address.

Should you have any questions regarding this matter, please call the office and speak to one of our representatives.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

Ron Price

Ron Price

------------------------------------------------------------

Return this portion with your check or money order payable to Capstone Credit & Collections, LLC at the above address.

20

GAVIN L SPENCER
8350-202 TERESA CATHERINE WAY
Port Richey, FL 34668

Account #: 182122-1
Total Due: $8,963.46

# MOVE-OUT CHECK LIST AND SUMMARY SHEET

Resident: Spencer
Apartment: 8350-202

182/22
D

| Date | Comments | | Initials |
|---|---|---|---|
| 10/31/12 | MOVE-OUT Skip | | |
| | RENT Oct. & Nov | 1138 569. | |
| | BALANCE OF LEASE | 3414. | |
| | CONCESSIONS | 569 | |
| | WATER/SEWER | 123.34 | |
| | LATE FEES | 105.⁰⁰ | |
| | INSPECTION – | | |
| | CLEANING Cfans:15 Stove:5. Kit. 85. Cl·Bads· ylo. | 171. | |
| | DAMAGE Carpet 189 P.L: 200. Wall rep. 10. | 399. | |
| | ~~ATTORNEY COSTS~~ Electricity | 26.66 | |
| | TOTAL CHARGES | 5946. | |
| | MINUS SECURITY DEPOSIT | 569 | |
| | REFUND | — | |
| | TOTAL DUE TO PROPERTY | 5377. | |
| | COLLECTION COSTS | 3586.⁴⁶ | |
| | TOTAL (OWED)/REFUND | 8963.⁴⁶ | |
| 11/2/12 | SODA | | |
| 10/31/12 | ~~NES~~ TBA | | |
| 11/1/12 | NOTICE OF INTENTION  7012 1010 0001 3470 7804 | | |

# EXHIBIT C

# CAPSTONE CREDIT & COLLECTIONS, LLC
## COLLECTIONS DIVISION

Phone (813) 949-0631
Fax (813) 948-3679
1-800-849-4607
capstonecredit@verizon.net
www.capstonecollections.com

P.O. Box 1267 • Lutz, Fl. 33548-1267

July 16, 2014

GAVIN L SPENCER
HOLLY A SPENCER
8350-202 TERESA CATHERINE WAY
Port Richey, FL 34668

Extension: 300
Account #: 182122
RE: ARBOR VILLAS
Total Due: $8,963.46

Dear GAVIN L SPENCER,

Pursuant to your correspondence/phone call, enclosed are copies of the documents you requested in regard to the above referenced account. Please make your check payable to Capstone Credit & Collections, LLC and remit the balance to the above address.

Should you have any questions regarding this matter, please call the office and speak to one of our representatives.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

*Ron Price*

Ron Price

------------------------------------------------------------

Return this portion with your check or money order payable to Capstone Credit & Collections, LLC at the above address.

20

GAVIN L SPENCER
8350-202 TERESA CATHERINE WAY
Port Richey, FL 34668

Account #: 182122-1
Total Due: $8,963.46